IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **DIANA MARIETTI A/K/A DIANA ELIZABETH LUGO**,<br><br>Plaintiff,<br><br>v.<br><br>**EDUARDO SANTACANA**, *et al.*,<br><br>Defendants. | Civil No. 14-1902 (BJM) |

## OPINION AND ORDER

Diana Marietti a/k/a Diana Elizabeth Lugo ("Marietti") brought this action under the court's diversity jurisdiction against Eduardo Santacana ("Santacana"), Sheila Gomez ("Gomez"), and their alleged conjugal partnership, seeking to collect alimony and child support awards issued by state courts in Minnesota and Puerto Rico. Docket No. 22. Contending that Gomez and Santacana "apparently" were never legally married, Gomez moved for partial summary judgment, Docket No. 69, and that motion was denied. Docket No. 84. Marietti moved for summary judgment, Docket No. 83, and defendants opposed. Docket No. 86. The case is before me on consent of the parties. Docket No. 55.

For the reasons set forth below, Marietti's motion is **GRANTED IN PART**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo* v. *U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying

those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg* v. *P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan* v. *Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## BACKGROUND[1]

Santacana and Gomez are domiciled in Puerto Rico, and Marietti is domiciled in Minnesota. SUF ¶¶ 5, 6. Marietti and Santacana were previously married and were divorced by a Minnesota state court in June 2001. SUF ¶¶ 8, 9. The Minnesota state court approved a divorce settlement agreement reached by Marietti and Santacana, and issued a judgment ordering Santacana to pay Marietti child support and alimony. SUF ¶ 9. After divorcing Marietti, Santacana moved to Florida and, later, to Puerto Rico. SUF ¶ 12.

In 2004, Santacana asked the Minnesota court to modify and eliminate the alimony award. SUF ¶ 14. The Minnesota court denied those requests and ordered Santacana to pay

---

[1] Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56 submissions: Marietti's Statement of Uncontested Facts ("SUF"), Docket No. 83-1, and defendants' Opposing Statement of Facts ("OSF"). Docket No. 86-1. Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv.* v. *Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the district court may forgive a violation of Local Rule 56, litigants ignore the Local Rule "at their peril." *See Mariani-Colón* v. *Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

an additional amount of child support and alimony. SUF ¶ 14. In October 2013, the Minnesota court issued a judgment ordering Santacana to pay $321,747.82 for alimony, $91,297.71 for child support, $33,354.80 for violations related to the divorce decree, and $2,926.80 for attorney's fees. SUF ¶ 15. The Minnesota court has never relieved Santacana of his obligation to continue paying Marietti alimony. SUF ¶ 11.

In February 2014, Marietti filed an action in Puerto Rico state court, seeking to enforce the Minnesota state court's judgment. SUF ¶ 18. In January 2015, the Puerto Rico state court calculated the amount of alimony due under the Minnesota state court's judgment, ordered Santacana to pay $359,771.82 in alimony, and instructed Santacana that his obligation to make monthly alimony payments remains. SUF ¶¶ 20, 21. Marietti seeks to collect $487,351.13. SUF ¶ 21. This amount includes the $359,771.82 in alimony calculated by the Puerto Rico state court in January 2015, as well as the October 2013 Minnesota state court's order requiring Santacana to pay $91,297.71 for child support, $33,354.80 for violations related to the divorce decree, and $2,926.80 for attorney's fees. SUF ¶¶ 15, 20, 21. Santacana conclusorily claims that the amount he owes "has changed," but he has provided no evidence specifically showing that he actually owes less than the claimed $487,351.13. OSF ¶¶ 15, 20, 21.

***Defendants' Marital Status***

Marietti asserts Santacana and Gomez are married, and it is undisputed that in November 2001 Santacana and Gomez participated in a religious marriage ceremony in Miami, Florida. SUF ¶ 1; Docket Nos. 73-2, 90-2. Santacana and Gomez initially admitted that they were married, but have subsequently claimed that their marriage was not legally valid. OSF ¶ 1; Docket No. 51 ¶ 1; Docket No. 69. In support of this claim, Gomez filed an affidavit that improperly included a hearsay statement of an unidentified Miami-Dade County Clerk employee. Docket No. 84. This statement was offered to prove that no marriage certificate was recorded in Florida. *Id.* Thus, the court previously found a genuine dispute of material fact as to whether Santacana and Gomez have a valid marriage. *Id.*

## DISCUSSION

Marietti contends that Santacana's state-court decrees should be enforced against each of the three defendants. Docket No. 83 at 17. Santacana and Gomez respond that genuine disputes of material fact preclude summary judgment as to all three defendants. Docket No. 86. Before proceeding to the merits of the parties' respective positions, it is necessary to address a threshold jurisdictional aspect of this diversity jurisdiction case.

The "domestic relations exception divests federal courts of jurisdiction over 'a narrow range of [cases implicating] domestic relations issues' that would otherwise meet the requirements for federal diversity jurisdiction under 28 U.S.C. § 1332(a)." *Irish* v. *Irish*, 842 F.3d 736, 740 (1st Cir. 2016) (quoting *Marshall* v. *Marshall*, 547 U.S. 293, 307 (2006)). Yet, "[i]n general, lawsuits affecting domestic relations, however substantially, are not within the exception unless the claim at issue is one to obtain, alter or end a divorce, alimony or child custody decree." *Dunn* v. *Cometa*, 238 F.3d 38, 41 (1st Cir. 2001). "This narrow construction led the Court in *Ankenbrandt*," which involved claims "by a mother, on behalf of her daughters, charging their father, now divorced, and his companion with sexual and physical abuse of the children," to conclude "that the exception did not apply to [the] tort claims there at issue despite their intimate connection to family affairs." *Irish*, 842 F.3d at 740 (citing *Ankenbrandt* v. *Richards*, 504 U.S. 689, 691, 703 (1992)).

The narrow domestic relations exception also does not bar "a suit to enforce compliance with a separation agreement's terms ordering alimony." *Irish*, 842 F.3d at 743 (citing *Mooney* v. *Mooney*, 471 F.3d 246, 247 (1st Cir. 2006)). Indeed, it is well-settled that "[f]ederal courts will . . . exercise jurisdiction over the enforcement of support arrearages." *See Drewes* v. *Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988); *see also Barber* v. *Barber*, 62 U.S. 582, 591 (1858) ("The parties to a cause for a divorce and for alimony are . . . bound by a decree for both . . . . The decree in both is a judgment of record, and will be received as such by other courts. And such a judgment or decree, rendered in any State of the United States, the court having jurisdiction, will be carried into judgment in any other State, to

have there the same binding force that it has in the State in which it was originally given. For such a purpose, both the equity courts of the United States and the same courts of the States have jurisdiction."); *Crouch* v. *Crouch*, 566 F.2d 486, 487 (5th Cir. 1978); *United States* v. *Kegel*, 916 F. Supp. 1233, 1235 (M.D. Fla. 1996) ("enforcing a decree involving alimony or child support is outside the scope of the [domestic relations] exception").

In this case, Marietti and Santacana reached a divorce settlement agreement that was incorporated into a divorce decree in 2001 by a Minnesota state court. Marietti underscores, without opposition from defendants, that this decree is a final judgment, and defendants do not suggest that the Puerto Rico state court decree is modifiable. Marietti seeks to *enforce* the amounts awarded by these state-court decrees. Because these amounts are "calculable solely from the records of the" state courts in Minnesota and Puerto Rico, *Jagiella* v. *Jagiella*, 647 F.2d 561, 564 (5th Cir. 1981), and because Marietti does not seek to obtain, alter, or end an alimony or child support decree, *Dunn*, 238 F.3d at 41, the court, in this diversity jurisdiction case, must give full faith and credit to the state-court decrees. *See Barber*, 62 U.S. at 591; *Maner* v. *Maner*, 401 F.2d 616, 618 (5th Cir. 1968); *Maner* v. *Maner*, 412 F.2d 449, 451 (5th Cir. 1969) (in diversity jurisdiction case, district court in Alabama correctly enforced Florida state court's alimony decrees, as these final judgments were "entitled to enforcement under the Full Faith and Credit Clause").

Marietti seeks to collect $487,351.13, which includes the $359,771.82 in alimony calculated by the Puerto Rico state court in January 2015, as well as the October 2013 Minnesota state court's decree requiring Santacana to pay $91,297.71 for child support, $33,354.80 for violations related to the divorce decree, and $2,926.80 for attorney's fees. While Santacana conclusorily claims that this amount "has changed," he has not pointed the court to any evidence showing that the amount he owes is actually less than $487,351.13. Since the $487,351.13 figure was calculated as of January 2015, and since Santacana remains obligated to pay alimony under the state-court decrees, it is quite possible that he may actually owe more than the amount requested. In short, because

Santacana has "failed to properly address" the amount he owes to Marietti under the state-court decrees, and because Marietti has marshaled competent evidence showing that she is entitled to the amount claimed, the $487,351.13 figure is deemed true. *See Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (party cannot create a genuine dispute of material fact with "conclusory allegations"); *see also* Fed. R. Civ. P. 56(e)(2) (court may consider fact undisputed if party fails to properly address the opposing party's assertion of fact); D.P.R. Civ. L. R. 56(e) (same). Thus, per the state-court decrees, judgment shall be entered against Santacana in the amount of $487,351.13.

Marietti also seeks to hold Gomez and the alleged Santacana-Gomez conjugal partnership liable for the $487,351.13. Two weighty reasons militate against such an award. First and foremost, even assuming *arguendo* that Santacana and Gomez are legally married, Puerto Rico law holds that "an action can be brought against the conjugal partnership"—which is "an entity separate and distinct from the spouses composing it"—only "where the spouse sued does not have enough money or assets to answer for the damage caused." *Cruz Viera v. Registrador*, 18 P.R. Offic. Trans. 1046, 1051–53 (P.R. May 11, 1987); *Sepulveda v. Maldonado Febo*, 8 P.R. Offic. Trans. 556, 559–60 (P.R. Mar. 19, 1979) (evidentiary hearing was ordered to determine "whether the defendant has separate property with which he may satisfy the civil judgment imposed upon him, or in its stead to determine which part of said judgment should be defrayed by the marital community"); P.R. Laws Ann. tit. 31, § 3663. Additionally, such an action "is valid only when it is alleged *and* established that the conjugal partnership has enough assets to satisfy the debts and obligations mentioned in Civil Code sec. 1308." *Cruz Viera*, 18 P.R. Offic. Trans. at 1053 (emphasis added) (citing P.R. Laws Ann. tit. 31, § 3661).

In this case, Marietti has not directed the court to any evidence, or proffered a statement within the SUF, relating to whether Santacana has sufficient separate property to satisfy the amounts imposed by the state-court decrees. *See Cruz Viera*, 18 P.R. Offic. Trans. at 1051–53; *Sepulveda*, 8 P.R. Offic. Trans. at 559–60. And the same is true with

respect to whether the conjugal partnership has sufficient "assets to satisfy the debts and obligations mentioned in Civil Code sec. 1308." *See* Cruz Viera, 18 P.R. Offic. Trans. at 1053 (citing P.R. Laws Ann. tit. 31, § 3661). This lacuna in the evidentiary record, which Marietti was required to establish as the party moving for summary judgment, precludes the court from holding the alleged conjugal partnership liable for any amounts owed.

The same result follows with respect to Gomez, even assuming *arguendo* that she and Santacana are validly married. Marietti has sued Gomez in her individual capacity, seeking to attach her "private properties, as well as [the defendants'] joint marital properties." Docket No. 83 at 17. But Marietti has cited no statute or case law holding that Puerto Rico law would permit her to collect alimony or child support owed by Santacana (Marietti's former spouse) directly from the separate property of Gomez, who is allegedly Santacana's current spouse. And a Puerto Rico Supreme Court case suggests that such decrees give rise only to a "personal obligation" that may be satisfied with the assets of the spouse against whom the decree issued, or with the joint assets of the conjugal partnership formed by that particular spouse and his or her new spouse—assuming the requirements detailed above are met. *See Figueroa Robledo* v. *Rivera Rosa*, 149 D.P.R. 565, 578 (P.R. Oct. 22, 1999). Accordingly, Marietti has not carried her burden of demonstrating that Gomez's separate property may be held to answer for amounts Santacana owes pursuant to the state-court decrees.

There is a second reason weighing against a finding that Gomez and the alleged conjugal partnership are liable for the debt at issue: this court previously found a genuine dispute of material fact as to whether Santacana and Gomez are validly married, and the state of the current evidentiary record does not counsel straying from that conclusion. Puerto Rico law provides that "[a] marriage contracted in the United States or in a foreign country, *where such acts are not required to be registered in a regular and authentic manner*, the said marriage may be proven by any of the means of proof admitted by law." P.R. Laws Ann. tit. 31 § 265 (emphasis added); *see also In Re Matos*, 63 P.R.R. 972 (1944).

Here, it is undisputed that in November 2001 Santacana and Gomez participated in a religious marriage ceremony in Miami, Florida, and so the court must consider, as a threshold matter, whether a marriage in that jurisdiction must "be registered in a regular and authentic manner" in order to be "proved." *See* P.R. Laws Ann. tit. 31, § 265. "Since 1967, when the Florida legislature abolished common law marriage, there has been only one method of producing a legally cognizable marriage in Florida." *Hall* v. *Maal*, 32 So. 3d 682, 684 (Fla. Dist. Ct. App. 2010) (citing Fla. Stat. §§ 741.01–.212). "Persons desiring to be married are required to apply for a marriage license which can be issued by a county court judge or the clerk of the circuit court." *Hall*, 32 So. 3d at 684 (citing Fla. Stat. § 741.01). "After issuance, a license is valid for 60 days within which time the marriage must be solemnized." *Hall*, 32 So. 3d at 684 (citing Fla. Stat. § 741.041).

A marriage "may be solemnized by ordained clergy, judges, clerks of court, or notaries public." *Hall*, 32 So. 3d at 684 (citing Fla. Stat. § 741.07). "After solemnization, the officiant shall certify on the license that the marriage has been performed and deliver it, within 10 days, to the clerk or judge that issued it." *Hall*, 32 So. 3d at 684 (citing Fla. Stat. § 741.08). "The county court judge and the clerk of the circuit court are required to keep a correct record of all licenses issued and of the licenses returned as certified by the officiant." *Hall*, 32 So. 3d at 684 (citing Fla. Stat. § 741.09). Importantly, Florida law provides that a marriage is "not to be solemnized without" first obtaining "a license." *See* Fla. Stat. Ann. § 741.08. And a "marriage ceremony without a license, coupled with living together and 'acting married,' . . . recreate a species of common-law marriage in violation" of Florida law and does not constitute a "valid marriage." *See Hall*, 32 So. 3d at 687.

In this case, Marietti contends that there is a conjugal partnership between Santacana and Gomez because they participated in a religious marriage ceremony in Florida. Santacana and Gomez retort that they are not validly married, and Marietti—as the party moving to hold the alleged conjugal partnership liable—bears the burden of coming forward with evidence that would permit a finding that the marriage was legally valid.

Marietti has proffered a certificate demonstrating that a religious ceremony took place in Florida between Gomez and Santacana. This is not enough. In Florida, the "county court judge and the clerk of the circuit court are required to keep a correct record of all licenses issued," and Marietti has not produced such a license to prove the marriage of Santacana and Gomez. *See Hall*, 32 So. 3d at 684. And because a "marriage ceremony without a license, coupled with living together and 'acting married,'" is generally insufficient to form a "valid marriage" in Florida, Marietti has not carried her burden of showing that the conjugal partnership exists or could be held liable. *See Hall*, 32 So. 3d at 687.

To be sure, the Puerto Rico Supreme Court has held that "there is nothing--inside or outside our body of Rules--requiring a definite or specific procedure for establishing the celebration of a marriage or for corroborating the facts set forth in the certificate" of marriage. *Pueblo* v. *Jordan Tarraza*, 18 P.R. Offic. Trans. 687, 694 (P.R. Mar. 24, 1987); *see also In re Hon. Gonzalez Porrata-Doria*, 158 D.P.R. 150, 158–61 (P.R. Sept. 24, 2002). Accordingly, for a marriage formed in Puerto Rico, "a witness with a powerful memory--able to flawlessly retain and reproduce before the court all the information required by the certificate--could fully and completely show that all the statutory requirements were met." *See Pueblo*, 18 P.R. Offic. Trans. at 694. But, because the marriage at issue here was allegedly formed in Florida, Puerto Rico law requires consideration of Florida law. *See* P.R. Laws Ann. tit. 31 § 265. The latter jurisdiction's law permits "only one method of producing a legally cognizable marriage," and Marietti has not shown that Florida's requirements have been met. *See Hall*, 32 So. 3d at 684.

Marietti additionally underscores that defendants admitted in their answer that they were married, and contends that the court should hold them to that admission. "Ordinarily, a pleading admitting a fact alleged in an antecedent pleading is treated as a binding judicial admission, removing the fact from contention for the duration of the litigation." *See Harrington* v. *City of Nashua*, 610 F.3d 24, 31 (1st Cir. 2010). "But there are limits to what parties can admit . . . so it is important to parse the particular admission in each case." *Id.*

(internal citation omitted). And, in any event, "a court is not obliged to accept a proposition of law simply because one party elects not to contest it." *Id.*; *see also Comm'l Money Ctr., Inc.* v. *Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) ("legal conclusions are rarely considered to be binding judicial admissions"); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007) (judicial admissions "must be statements of fact that require evidentiary proof, not statements of legal theories").

In this case, the proffered judicial admission is not binding to establish the legality or validity of defendants' marriage. This is because courts have held that determining whether someone is validly or legally married is a mixed question of law and fact. *See, e.g.*, *Renshaw* v. *Heckler*, 787 F.2d 50, 54 (2d Cir. 1986) ("the question as to whether a person has been legally married to another is a mixed question of law and fact"); *In re Scheidig's Estate*, 180 So. 2d 675, 675 (Fla. Dist. Ct. App. 1965) (where woman claimed that she was decedent's wife at the time of his death, the "issue raised by her petition involved a mixed question of law and fact"). Because the validity of defendants' marriage is the legal part of the mixed inquiry, and because Marietti has not demonstrated that defendants' marriage was valid under Florida law, the proffered judicial admission is not binding. Thus, summary judgment is denied as to Marietti's claims against Gomez and the alleged Santacana-Gomez conjugal partnership.

## CONCLUSION

For the foregoing reasons, Marietti's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. Judgment shall be entered against defendant Eduardo Santacana in the amount of $487,351.13. Summary judgment is denied as to the claims against Gomez and the alleged conjugal partnership between Gomez and Santacana.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 24th day of March 2017.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge